NELLIE A. COOK *v.* HOLLISTER DRUG COMPANY, LIMITED.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED NOVEMBER 15, 1901. DECIDED NOVEMBER 29, 1901.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

In an action for damages resulting by reason of the negligence of the defendant, a druggist, in filling a certain prescription, the plaintiff alleged in the declaration, *inter alia,* that the liquid sold and delivered by the defendant to her and purporting to be the lotion ordered "contained some poisonous and deleterious ingredient not included in the prescription ordered." The evidence tended to show that the liquid furnished contained 5.24 grains of bichloride of mercury to the ounce and not four grains only as required by the prescription and that the bichloride of mercury was harmless in the quantity ordered but harmful in the quantity furnished. Held, that the variance, if any, between the pleadings and the proofs was immaterial.

A chemist may testify as an expert as to the effect on the human face of applications of bichloride of mercury.

The evidence in this case held sufficient to support a finding by the jury that the increase of 1.24 grains of bichloride of mercury to the ounce caused the injury complained of to the plaintiff's face.

OPINION OF THE COURT BY PERRY, J.

Plaintiff brought an action claiming three thousand dollars damages for injury alleged to have been caused by defendant to her health, feelings, person and property, the main allegations of the declaration being as follows:

"(1)   That the said defendant carries on at Honolulu, Island

of Oahu, a general drug and apothecary business and sells medicines and puts up prescriptions.

"(2) That one of the prescriptions customarily put up and sold by the said defendant, to-wit, prescription Number 15,730, is a lotion for the complexion and designed to be applied to the face, the ingredients of which said lotion are unknown to the plaintiff, but the same are in no way poisonous or harmful to the skin.

"(3) That on or about the 31st day of October, A. D. 1899, plaintiff ordered from said defendant a bottle of said lotion and defendant then sold and delivered to plaintiff a bottle of liquid purporting to be and represented by defendant as the lotion ordered by plaintiff, namely, prescription Number 15,730.

"(4) That the liquid so sold and delivered by defendant as aforesaid was not the lotion ordered by plaintiff, that it contained some poisonous and deleterious ingredient not included in the prescription ordered, but negligently and carelessly inserted by said defendant.

"(5) That plaintiff believing said liquid to be the same prescription ordered by her as aforesaid applied the same to her face, and that it poisoned, burned and injured her skin, and caused her great pain and suffering.

"(6) That as a further result of the injury so caused by said liquid plaintiff was confined to her home for several weeks, and was compelled to obtain medical treatment and to employ a substitute to discharge her duties as a teacher under the Board of Education."

The jury rendered a verdict for the plaintiff for five hundred dollars damages. The case comes to this Court on a number of exceptions by the defendant, all of which, except those herein considered, have been abandoned by counsel for the appellant.

The evidence adduced by the plaintiff tended to show that the defendant had, on one or more occasions prior to October 31, 1899, prepared and sold to the plaintiff, and that the plaintiff had used without injurious effect, a certain lotion for the complexion designed to be applied to the face and known as prescription number 15,730; that the prescription called for, bichloride of mercury, 12 grains, methylated spirits, 2 ounces, aqua of rose, 1 ounce, and oil of neroli, 3 drops; that on October

31, 1899, the plaintiff ordered of the defendant a bottle of the lotion and that in response the defendant sold and delivered to her a bottle of liquid purporting to be the lotion ordered; that in fact the liquid so last delivered contained 5.24 grains of bichloride of mercury to the ounce in place of four grains of that drug to the ounce as required by the prescription; and that the 1.24 grains additional of bichloride of mercury to the ounce was placed in the lotion by reason of the negligence of one of defendant's servants or agents. At the close of the plaintiff's case the defendant moved for a non-suit on the ground of variance between the pleadings and the proofs, the argument being that the evidence just recited did not support the allegation that the liquid sold contained some poisonous and deleterious ingredient not included in the prescription ordered, but negligently and carelessly inserted by said defendant. The motion was denied and an exception noted. The same question was preserved by the defendant by the presentation of certain requests for instructions to the jury and exceptions to the refusal of the trial judge to give the same.

The language of paragraph 4 of the declaration above quoted is capable of being interpreted so as to apply to an excess, not ordered, of an ingredient, though the same in kind as one ordered,—in other words, if 4 grains is ordered and in addition to such 4 grains another 1.24 grains is included, the 1.24 grains may be said to be an ingredient not ordered. In this view, there was, of course, no variance between the declaration and the proofs. Assuming, however, that the language of the declaration should be construed as meaning an ingredient differing in kind from any of those named in the original prescription and that, therefore, there was a variance between the proofs and the allegation, we are of the opinion that such variance was not material. The essence of the action is the negligence of the defendant in filling the prescription presented, which negligence caused injury to the plaintiff. It is immaterial whether that negligence consisted in adding to the mixture a deleterious sub-

stance different in kind from any of those named in the pre-
scription or in adding a substance the same in kind as one of
those so named but in excess of the quantity prescribed, such
substance being harmless in the quantity ordered but harmful
in the quantity furnished.   The latter are matters of mere
detail.   The variance was not such as could have misled the
defendant to its prejudice.

Another exception was to the ruling of the trial court per-
mitting the witness Shorey to give his opinion as to the effect
of applications of bichloride of mercury to the face.  We think
that the testimony was properly admitted.  The witness before
giving his opinion as an expert testified that he was a chemist
educated at the Queen's University, Ontario, Canada, that he
held the degree of Doctor of Science, that he was and for two
years last past had been employed as chemist by the local Board
of Health and that he had practiced chemistry for over ten
years.  A chemist is "a person versed in chemistry" and chem-
istry is "the science of the composition of material things and
the changes which they undergo in consequence of changes in
their ultimate composition."—Cent. Dict.  "A chemist is one
whose legitimate profession is to inquire into the nature and
properties of matter and of a combination or union between the
elements of which different substances are composed."—12 Am.
& Eng. Encycl. Law, 2nd edition, 433.  The opinions given by
the witness were upon questions requiring that special knowl-
edge and skill which he as a chemist possessed.  See *Hartung
v. The People,* 4 Parker Cr. R., 319, 327; 12 Am. & Eng.
Encycl. Law, 2nd edition, 434.

The remaining exception relied upon is to the verdict on the
ground that it is contrary to the law and the evidence.   The
contention is that the verdict can not be upheld in view of the
fact that the court instructed the jury, *inter alia,* as follows:
"If you find from the evidence that upon all occasions prior to
October 31, 1899, the plaintiff used a lotion containing four

grains of bichloride of mercury to the ounce without any injury resulting therefrom, then, if you find from the evidence that an increase of 1.24 grains of bichloride of mercury to the ounce did not so increase the strength of the lotion so as to cause burning, blistering and swelling, your verdict must be for the defendant and against the plaintiff." Under this instruction it was still left to the jury to determine whether or not the increase of 1.24 grains as stated was the cause of the injury to the plaintiff's face, and although the evidence of the experts, if taken by itself, would have, perhaps, required a finding for the defendant on this point, there was other evidence, to-wit, that of the plaintiff and her mother, tending to show that the excess of bichloride of mercury did cause the injury. In our opinion the evidence was sufficient to support the verdict.

The exceptions are overruled.

*Robertson & Wilder* for plaintiff.

*Andrews, Peters & Andrade* for defendant.